UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INEZ TITO LUGO, | No. 2:11-cv-0317 CKD P |
| Plaintiff, | |
| v. | ORDER |
| JOSEPH BICK, et al., | |
| Defendants. | |

Plaintiff is a former California prisoner proceeding pro se with an action for violation of civil rights under 42 U.S.C. § 1983. Plaintiff's claims concern the manner in which defendants provided treatment to him for Hepatitis C. Defendants Aguilera, Bick, Haile, Kotarek, Mehta, Parks, Saukhla and Walker (defendants) are all current or former employees of the California Department of Corrections and Rehabilitation at the California Medical Facility (CMF). Defendants move for summary judgment. The parties have consented to have all matters in this action before a United States Magistrate Judge. See 28 U.S.C. § 636(c).

I. Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents,

1

1  electronically stored information, affidavits or declarations, stipulations (including those made for
2  purposes of the motion only), admissions, interrogatory answers, or other materials. . ." Fed. R.
3  Civ. P. 56(c)(1)(A).
4       Summary judgment should be entered, after adequate time for discovery and upon motion,
5  against a party who fails to make a showing sufficient to establish the existence of an element
6  essential to that party's case, and on which that party will bear the burden of proof at trial. See
7  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "[A] complete failure of proof concerning an
8  essential element of the nonmoving party's case necessarily renders all other facts immaterial."
9  Id.
10       If the moving party meets its initial responsibility, the burden then shifts to the opposing
11  party to establish that a genuine issue as to any material fact actually does exist. See Matsushita
12  Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the
13  existence of this factual dispute, the opposing party may not rely upon the allegations or denials
14  of their pleadings but is required to tender evidence of specific facts in the form of affidavits,
15  and/or admissible discovery material, in support of its contention that the dispute exists or show
16  that the materials cited by the movant do not establish the absence of a genuine dispute. See Fed.
17  R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the
18  fact in contention is material, i.e., a fact that might affect the outcome of the suit under the
19  governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv.,
20  Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is
21  genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving
22  party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).
23       In the endeavor to establish the existence of a factual dispute, the opposing party need not
24  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual
25  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
26  trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce
27  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
28  /////

1 Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963
2 amendments).
3      In resolving the summary judgment motion, the evidence of the opposing party is to be
4 believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the
5 facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475
6 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's
7 obligation to produce a factual predicate from which the inference may be drawn. See Richards
8 v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902
9 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than
10 simply show that there is some metaphysical doubt as to the material facts . . . . Where the record
11 taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
12 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

13 II. Plaintiff's Complaint
14      In his complaint, which is signed under the penalty of perjury, plaintiff generally takes
15 issue with the treatment provided to him for Hepatitis C by defendants who are all medical
16 professionals. Plaintiff asserts that he was diagnosed with Hepatitis C in 2004. The gist of
17 plaintiff's complaint is that he should have been treated with pegylated interferon and ribavirin at
18 some point after he was diagnosed and before the platelet count in his blood dropped below
19 75,000.[1]

20 III. Defendant's Argument And Analysis
21      Essentially, defendants point to evidence indicating the interferon and ribavirin treatment
22 was never an appropriate treatment for plaintiff. For example, in his affidavit, defendant Bick
23 indicates as follows:
24 /////
25 /////

---

26 [1] At various points in his complaint, plaintiff complains about certain defendants' failure to
27 provide him with pain medication (e.g. ¶¶ 31-32). In his opposition to defendants' motion for
   summary judgment, plaintiff clarifies that defendants' failure to provide interferon for his
28 "failing" liver is his only basis of suit. Opp'n at 9-10.

1. Plaintiff was diagnosed with Hepatitis C in February 2004.

2. The California Department of Corrections and Rehabilitation has a "Clinical Management Program" in place for inmates diagnosed with Hepatitis C which is revised as research progresses. According to this program, an inmate is not eligible for "anti-viral therapy," which includes the drug interferon, until the disease produces stage 2 fibrosis in the liver.[2] It was not until December of 2009 that it was determined that plaintiff had stage 2 fibrosis.

3. At the time plaintiff reached stage 2 fibrosis, he also had "sub-optimally controlled diabetes" and low blood platelets. These two factors are listed as exclusionary for the interferon treatment in the "Clinical Management Program." Despite this, Dr. Bick was willing to provide interferon treatment to plaintiff. But, after Bick explained to plaintiff the risks and benefits of plaintiff's pursuing interferon treatment in his condition, plaintiff decided against it.

The Eighth Amendment's prohibition of cruel and unusual punishment extends to medical care of prison inmates. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). In order to state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, a prison inmate must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. The nature of a defendant's responses must be such that the defendant purposefully ignores or fails to respond to a prisoner's pain or possible medical need in order for "deliberate indifference" to be established. McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992). A showing of merely inadvertent or even negligent medical care is not enough to establish a constitutional violation. Estelle, 429 U.S. at 105-06.

There is nothing before the court suggesting that any defendant was deliberately indifferent to plaintiff's Hepatitis C. The record before the court indicates plaintiff had numerous visits with medical providers and numerous tests. Plaintiff fails to point to any evidence suggesting that any defendants' failure to provide plaintiff with the anti-viral therapy including

---

[2] Copies of the 2005 "Hepatitis C Clinical Management Program" and the 2008 version are attached to the declaration of defendant Saukhla as exhibits A and B. The 2005 version indicates inmates must be at stage 2-3 (meaning somewhere between stage 2 and 3) fibrosis before they could be eligible for anti-viral interferon therapy. Ex. A at 4. In the 2008 revision, the inmates at stage 2 became eligible for the anti-viral therapy. Ex. B. at 17.

interferon before he reached stage 2 fibrosis[3] was not medically sound let alone amounted to deliberate indifference.  Furthermore, plaintiff fails to point to any evidence suggesting he was caused any injury by any defendant because, among other things, the anti-viral therapy is not a guaranteed cure for patients with Hepatitis C.  Saukhla Decl. at ¶ 3.  Given the serious side effects of the anti-viral therapy, and given plaintiff's medical condition, it could have done more harm than good.  Id.

For all of these reasons, defendants are entitled to summary judgment with respect to plaintiff's claims arising under the Eighth Amendment.

IV.  Claims Arising Under California Law

Plaintiff identifies claims arising under state law, including negligence, in his complaint.  The court can exercise supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  However, when all federal claims have been dismissed before trial, the interests promoted by the exercise of supplemental jurisdiction are no longer present, and a court should decline to exercise jurisdiction over state law claims.  Carnegie Mellon University v. Cohill, 484 U.S. 343, 350 n. 7 (1988).  Accordingly, plaintiff's claims arising under state law will be dismissed without prejudice to filing in state court.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Defendants' motion for summary judgment (ECF No. 49) with respect to plaintiff's claims arising under the Eighth Amendment is granted;

/////
/////
/////
/////

---

[3] A primary argument submitted by plaintiff is that defendants essentially knew that by the time he reached stage 2 fibrosis his low blood platelet level would exclude him from anti-viral therapy.  Whether or not that is true is not relevant because nothing before the court suggests that administration of the anti-viral therapy before a patient reaches stage 2 is medically sound.  Furthermore, as indicated above, the evidence before the court shows that the state of plaintiff's diabetes also rendered anti-viral treatment not medically appropriate.

5

2. Plaintiff's claims arising under state law are dismissed without prejudice to plaintiff bringing those claims in a California court; and

3. This case is closed.

Dated: October 2, 2014

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1/lugo0317.57